UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND


CIVIL ACTION NO. 10-81-GWU


BOBBY L. GUNN,                                                                       PLAINTIFF,


VS.                                         **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                        DEFENDANT.


## INTRODUCTION

Bobby Gunn brought this action to obtain judicial review of an unfavorable administrative decision on his applications for Disability Insurance Benefits and for Supplemental Security Income. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th Cir. 1990). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Crouch, 909 F.2d at 855.

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. § 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a <u>de</u> <u>minimis</u> hurdle in the disability determination process. <u>Murphy v. Secretary of Health and Human Services</u>, 801 F.2d 182, 185 (6th Cir. 1986). An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." <u>Farris v. Secretary of Health and Human Services</u>, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless." <u>Id</u>., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983). Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. <u>E.g., Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist.

<u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Gunn, a 27-year-old former grill cook, seed packer and farm hand with a "limited" education, suffered from impairments related to chronic left knee strain, acute respiratory distress syndrome, sleep apnea, and obesity.  (Tr. 10, 15).  While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of sedentary level work.  (Tr. 11, 14-15).  Since the available work was found to constitute a significant number of jobs, the claimant could not be considered totally disabled.  (Tr. 15-16).  The ALJ based this decision, in large part, upon the testimony of a vocational expert.  (Tr. 15).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Gina Baldwin included an exertional limitation to sedentary level work, restricted from a full range

by such non-exertional restrictions as (1) an inability to ever kneel, crawl and climb ladders, ropes or scaffolds; (2) an inability to more than occasionally stoop, crouch and climb ramps or stairs; (3) a need to avoid even moderate exposure to temperature extremes and pulmonary irritants such as fumes, odors, gasses, dust, pollen, poor ventilation and pollutants; and (4) a need to avoid concentrated exposure to humidity.  (Tr. 41).  In response, Baldwin identified a significant number of jobs in the national economy which could still be performed.  (Tr. 42).  Therefore, assuming that the vocational factors considered by the expert fairly characterized Gunn's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

The hypothetical factors fairly characterized Gunn's condition as required by Varley.  Dr. Kip Beard examined the plaintiff and opined that he retained the ability to sit, stand, move about, lift, carry, and travel.  (Tr. 320-321).  However, in view of a severe restrictive defect on spirometry along with his subjective dyspnea complaints, Dr. Beard indicated that the claimant should not perform prolonged or excessive physical exertion and should have no exposure to environmental extremes.  (Tr. 321).  The limitation to sedentary level work and the environmental restrictions of the hypothetical question were consistent with this opinion.

Dr. Robert Brown (Tr. 329-337) and Dr. Carlos Hernandez (Tr. 342-349) each reviewed the record and opined that Gunn would be limited to light level work restricted from a full range by an inability to ever climb ladders, ropes or scaffolds,

an inability to more than occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl, a need to avoid even moderate exposure to temperature extremes and environmental pollutants and a need to avoid concentrated exposure to humidity. The hypothetical factors were essentially consistent with the opinions of the medical reviewers. These reports provide substantial evidence to support the administrative decision.

Dr. Stephen Damron indicated that Gunn would be unable to work for at least a year. (Tr. 340). Such a conclusory opinion goes to the ultimate issue of disabled status and is reserved to the Commissioner under the federal regulations at 20 C.F.R. § 404.1527(e)(1). Therefore, this opinion was not binding on the ALJ.

The court notes that Gunn alleges extremely severe problems relating to his breathing and attended the administrative hearing using an oxygen tank. (Tr. 27). However, despite these pulmonary complaints, the plaintiff continued his cigarette smoking habit. (Tr. 318, 357). In Mullins v. Secretary of Health and Human Services, 836 F.2d 980, 985 (6th Cir. 1987), the court found that in view of a claimant's continued smoking habit, "it was difficult to invision [sic] a severe and environmental restriction imposed by a pulmonary condition." Nevertheless, the ALJ did include among his findings a number of environmental restrictions to accommodate the breathing difficulties.

Gunn argues that the ALJ erred by failing to find that cellulitis was a "severe" impairment.[1]  The plaintiff was hospitalized on June 3, 2008 at the St. Claire Regional Medical Center with complaints of battling bilateral lower extremity cellulitis for the past several months.  (Tr. 354).  The claimant reported that his symptoms would improve temporarily with antibiotics and fluid pills but then quickly return. (Id.).  The patient was discharged on June 16, 2008 in much improved condition after a difficult hospital stay involving respiratory and renal failure.[2]  (Tr. 355).  Gunn asserts that Dr. Damron saw him for follow-up for cellulitis in July of 2008, contradicting the ALJ's statement that he required no further treatment for this condition. (Tr. 10).  However, the July, 2008 record from Dr. Damron only mentions the past cellulitis treatment at St. Claire and actually concerns treatment for peripheral edema.  (Tr. 373).   The St. Claire hospital reports do not impose any long-term functional restrictions relating to cellulitis which were not presented to the ALJ.  (Tr. 350-363).  The mere diagnosis of a condition does not prove its severity and its disabling effects must still be shown.  Higgs v. Bowen, 880 F.2d 860, 863

---

[1]Cellulitis is defined as a "an acute, diffuse, spreading, edematous, suppurative inflammation of the deep subcutaneous tissues and sometimes muscle, which may be associated with abscess formation.  It is usually caused by infection of an operative or traumatic wound, burn, or other cutaneous lesion by various bacteria . . . ."  Dorland's Illustrated Medical Dictionary (27th Ed.) at 299.

[2]The respiratory difficulties occurred during sleep, and evaluation for CPAP for home use was recommended.  (Tr. 355).  The renal failure was related to the introduction of an ACE inhibitor which was discontinued.  (Id.).

(6th Cir. 1989).  As noted by the defendant, the cellulitis would not appear to have impaired the plaintiff for at least a one-year time period and, so, would not meet the duration requirement of the federal regulations at 20 C.F.R. § 404.1509. Furthermore, the hypothetical question included a number of restrictions on lifting and movement which would arguably accommodate the cellulitis condition even if it should be regarded as a "severe" impairment.   Under these circumstances, the court finds that the ALJ properly found that cellulitis was not a "severe" impairment.

Another error alleged by Gunn is that the ALJ failed to find that chronic venous insufficiency was a "severe" impairment.  This condition was noted during the hospitalization at St. Claire in June of 2008.  (Tr. 353).  Physical therapy and compression stockings were recommended.  (Id.).  However, specific limitations in excess of those found by the ALJ were not indicated by the hospital staff as a result of this condition.  (Tr. 350-363).  As previously noted, the mere diagnosis of a condition does not prove its severity and its disabling effects must still be shown. Higgs at 880 F.2d at 863.   The condition is not mentioned in the medical record by other treating and examining sources including Dr. Beard (Tr. 317-325) and Dr. Damron (Tr. 310-316, 368-374).   Therefore, under these circumstances, the undersigned finds no error.

Gunn argues that the ALJ erred in failing to find that the combination of his impairments met or equaled a Listing section.  When a claimant alleges that a Listing section is met or equaled, he must present specific medical findings that

satisfy all of the criteria of a particular Listing.  Hale v. Secretary of Heath and Human Services, 816 F.2d 1078, 1082-1083 (6th Cir. 1987).  The evidentiary standards are stricter for presumptive disability under the Listings because this represents an automatic screening based on medical findings alone rather than on all relevant factors to the claim.  Sullivan v. Zebley, 493 U.S. 521, 532 (1990).  In the present action, the plaintiff only vaguely alludes to evidence rather than citing specific medical findings which support his claim.  The ALJ noted reasons why the requirements for Listing Sections 1.02(A), 3.02 and 3.10 were not satisfied. (Tr. 11). The plaintiff asserts that the ALJ should also have considered Section 4.13 regarding chronic venous insufficiency of a lower extremity.  However, the claimant concedes that the Listing is not met and does not provide specific arguments as to why it would be equaled.  Gunn has not presented specific arguments as to how any of these Listing sections would be met or equaled based on the additional finding of obesity.  Therefore, the court must reject the plaintiff's argument.

Finally, Gunn asserts that the ALJ erred by disregarding the vocational expert's testimony that there would be no jobs if one were required to take breaks of 15 minutes every two hours.  (Tr. 42).  No medical source, including the staff at St. Claire (Tr. 161-204, 350-363, 375-376), the staff at the University of Kentucky Medical Center (Tr. 206-261), the staff at the Pikeville Medical Center (Tr. 262-309), Dr. Stephen Damron (Tr. 310-312, 338-340, 368-374), Dr. Kip Beard (Tr. 317-325), Dr. Byron Westerfield (Tr. 326-328), Dr. Robert Brown (Tr. 329-337), and Dr. Carlos

Hernandez (Tr. 342-349), identified such a limitation.  Therefore, the court must reject the plaintiff's argument.

The undersigned concludes that the administrative decision should be affirmed.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 13th day of April, 2011.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**